UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

J.S., a child with a disability, individually and
by his parent and next friend, Y.S.,

                     Plaintiff,                1:07-CV-481-DNH-DRH

         v.

NORTH COLONIE CENTRAL SCHOOL
DISTRICT,

                     Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

APPEARANCES:

JASON H. STERNE
Attorney for Plaintiff
Office of Andrew K. Cuddy
5888 Main Street
Williamville, NY 14221

KENNETH S. RITZENBERG
Attorney for Defendant
Young, Sommer Law Firm
5 Palisades Drive
Albany, NY 12205

DAVID N. HURD
United States District Judge

**<u>MEMORANDUM-DECISION and ORDER</u>**

## I. <u>INTRODUCTION</u>

       Plaintiff J.S. ("plaintiff"), by his parent Y.S., brings suit against defendant North

Colonie Central School District ("defendant").  Plaintiff challenges the decision of a State

Review Officer ("SRO") to uphold in part and annul in part the prior determination of an

Impartial Hearing Officer ("IHO") pursuant to the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1415(i)(2).  In particular, plaintiff asserts the SRO erred in upholding the portion of the IHO's decision that found defendant offered plaintiff a free appropriate public education ("FAPE") as required by the IDEA and Article 89 of the New York Education Law.  Further, plaintiff alleges the SRO erred in annulling the portion of the IHO's decision that directed defendant to provide him with transition services.  In addition to his challenge of the SRO's decision, plaintiff also seeks injunctive relief directing defendant to allow him to return to the general education environment until the final resolution of his appeal as required by the pendency provision of the IDEA, 20 U.S.C. § 1415(j).  Plaintiff further alleges defendant violated § 504 of the Rehabilitation Act of 1973 when it refused to allow him to attend general education summer school classes.  Finally, plaintiff seeks attorneys' fees pursuant to the IDEA, 20 U.S.C. § 1415(i)(3)(B).

Defendant moves for summary judgment as to all of plaintiff's claims pursuant to Federal Rule of Civil Procedure 56.  Plaintiff opposes and cross moves for summary judgment.

## II.  FACTUAL BACKGROUND

### A.  Plaintiff's Educational History Prior to the IHO and SRO Decisions

Plaintiff was diagnosed with autism in 1994 at the age of six.  His condition impairs his functional communication, language, writing, reading comprehension, and social skills. Following his diagnosis, plaintiff received special educational services while attending defendant's public schools.  During the 2002-2003 academic year, plaintiff was in the eighth grade and attended a self-contained English Language Arts class.  He received services

from a one-on-one aide throughout the day and participated in general education classes for Math, Science, and Social Studies.

On June 20, 2003, the Committee on Special Education ("CSE") met to develop plaintiff's transition to high school for the 2003-2004 academic year. Upon evaluating information from various physicians, plaintiff's speech therapist, and his special and general education teachers, the CSE determined plaintiff should pursue an Individualized Education Program ("IEP") diploma because he did not have the basic skills necessary to pass Regents courses. A second CSE meeting was held on June 17, 2004, at which it was determined modifications to plaintiff's IEP were necessary to reflect his pursuit of an IEP diploma. The CSE recommended plaintiff receive a combination of general education and special education classroom instruction, the assistance of a full-time one-on-one aide throughout the school day, occupational therapy, and speech-language therapy. The CSE also recommended that plaintiff continue to attend his English courses in a self-contained special education classroom.

Following the June 17, 2004 CSE meeting, plaintiff's parents requested and obtained an independent psychoeducational evaluation performed by Dr. Melinda Tanzman, Director of the Child Research and Study Center at the State University of New York in Albany. Dr. Tanzman concluded that plaintiff did not have the capacity to understand concepts presented in his global history and science classes. In regard to plaintiff's communication and language skills, Dr. Tanzman found the following: plaintiff had the verbal skills of a six year-old (placing him below the first percentile); plaintiff was able to read and comprehend written text at about the end of the second grade level; plaintiff could write at approximately the beginning of the third grade level; and plaintiff seemed more quiet and less

responsive to others than he did when Dr. Tanzman previously evaluated plaintiff in 1998.

Based upon her findings, Dr. Tanzman recommended that plaintiff continue to receive

language and communication special education services and that he also receive services

for the development of his functional and job-related skills.  As a result of Dr. Tanzman's

findings, defendant notified plaintiff's parents that plaintiff's IEP would be modified to reflect

Dr. Tanzman's conclusions and best address plaintiff's educational needs.

On January 28, 2005, the CSE convened to discuss several proposed

modifications to plaintiff's IEP.  Plaintiff's speech therapist stated at the meeting that plaintiff

was not learning language in a casual manner, and therefore, he needed a curriculum aimed

more at developing skills needed to function outside the classroom.  The CSE then proposed

that plaintiff be removed from his general education Regents level global history class so that

he could receive instruction on more communication-focused and day-to-day activities.  The

CSE also proposed that plaintiff attend a weekly group counseling session so that he would

have the opportunity to practice his social and communication skills.  The January 28, 2005

meeting concluded without making a final determination as to plaintiff's IEP.  The matter was

adjourned for further discussion at a later time.

On March 11, 2004, the CSE reconvened and proposed that plaintiff receive the

following: occupational therapy twice per month; a more functional curriculum in his speech

therapy, including functional communication skills three times per week; a group counseling

session once per week; a one-on-one aide to provide him with services throughout the day;

Science, Global History, and English course instruction in an Academic Skills Classroom

("ASC") instead of a general education classroom with other non-disabled students; and

Math, Computer Graphics, Orchestra, and Food Processing course instruction in the general

education classroom.  Finally, the CSE maintained that plaintiff should receive an IEP diploma.

Plaintiff's parents stated their rejection of the IEP proposed during the March 11, 2005 meeting.  They further stated that they wished to invoke plaintiff's due process rights and pursue mediation to resolve any disputes concerning the proposed IEP.  On March 14, 2005, plaintiff's parents sent defendant a letter requesting an impartial hearing to decide whether the CSE's proposed IEP constituted a FAPE as required by the IDEA.  Because of the pendency provision within the IDEA, the IEP initially proposed for the 2004-2005 academic year remained in place as the last IEP agreed upon by both parties.  Accordingly, plaintiff received general education classroom instruction for Global History, Math, Science, Physical Education, and Orchestra and self-contained classroom instruction for English Language Arts. Plaintiff also received speech-language and occupation therapy services and had a one-on-one aide.

On April 7, 2005, plaintiff's parents informed defendants that they wished to postpone the mediation and due process proceedings in an effort to amicably resolve their disagreements with the proposed IEP.  On August 1, 2005, the CSE met again this time to develop plaintiff's IEP for the 2005-2006 academic year–the year plaintiff entered the eleventh grade.  The CSE again recommended plaintiff receive a greater proportion of self-contained classroom instruction in relation to his current level of general education classroom courses.  Specifically, the CSE proposed plaintiff be placed in general education classes for Science, Studio Art, Orchestra, Math, and Physical Education and in special education self-contained classes for English Language Arts, Global History, and a special education class entitled "Academic Skills II."  The 2005-2006 IEP also included continued assistance from a

full-time one-on-one aide, occupational therapy sessions twice per month, and speech language therapy three times per week in a group session.  In conclusion, the CSE again maintained that plaintiff should pursue an IEP diploma instead of "a regular high school diploma."

Plaintiff's parents again disagreed with the CSE's proposed IEP and plaintiff therefore received his 2004-2005 IEP pursuant to the IDEA's pendency provision.  Plaintiff's parents formally reactivated their due process request for an impartial hearing by way of a letter sent to defendants on August 22, 2005.  In the meantime, plaintiff began the eleventh grade under the pendency IEP.

Prior to eleventh grade, plaintiff had not passed the Regents Competency Test ("RCT")[1] in Global History or Life Science.  Nevertheless, pursuant to his pendency IEP, plaintiff was again enrolled in the general education class for Global History and Science and again failed the Global History RCT and Regents Examination during the 2005-2006 academic year.  Plaintiff also failed the Living Environment Regents Exam and the RCT for Science during the same school year.  Plaintiff did, however, pass both the RCT and Regents Examination in Math.  Plaintiff's parents admit that for their son to receive a local high school diploma he would have to pass at least four additional RCTs, including subjects in Global History, U.S. History, Writing or Reading, and Science.

---

[1] According to the New York State Education Department, "Regents competency tests (RCT's) are achievement tests designed to assess basic proficiency in the areas of reading, writing, mathematics, science, and social studies." NEW YORK STATE EDUCATION DEPARTMENT, REGENTS EXAMINATIONS, REGENTS COMPETENCY TESTS, AND PROFICIENCY EXAMINATIONS 1 (2001), http://www.emsc.nysed.gov/osa/hsinfogen/ hsinfogenarch/sam2001.pdf. Such tests are administered prior to the administration of the Regents Examination.

### B.  The IHO's Decision

Plaintiff's due process hearing commenced on November 17, 2005.  A number of hearings were held throughout the academic year, the last of which concluded on June 27, 2006.  On October 29, 2006, the IHO issued its Decision and Order finding that defendants recommendations in the 2005-2006 IEP offered plaintiff a FAPE in the least restrictive environment as required by the IDEA.

The IHO denied plaintiff's parents' requests to place their son in a full-time general educational classroom setting and to modify their son's diploma designation from an IEP diploma to a local high school diploma.  The IHO also rejected plaintiff's parents' argument that they were denied a meaningful opportunity to participate in the CSE meetings or in the development of the proposed IEPs.  As a foundation for his findings, the IHO found that defendant's CSE appropriately relied upon Dr. Tanzman's evaluation of plaintiff and the reports and recommendations of plaintiff's teachers and service providers when developing plaintiff's new IEP.  In particular, the IHO took issue with the fact that plaintiff's parents failed to provide any expert evaluation or report contradicting the multiple opinions that plaintiff was not benefitting from his participation in general education classroom settings with exception for his Math and possibly his Science courses.  Instead, plaintiff's parents only offered their own conclusions that plaintiff benefitted from the general education classroom environment, and plaintiff's parents failed to offer any evidence opposing the expert consensus that plaintiff needed small classroom settings to help him cope with the significant deficiencies in his language, reading, writing, and social skills.  The IHO emphasized plaintiff's difficulty with language-based subjects such as Global History and English and determined that all of the experts' testimony demonstrated the need for small-classroom instruction in such courses.

The IHO also rejected the argument that the proposed IEP failed to place plaintiff in the least restrictive environment. Although defendant did not contest plaintiff's participation in general classroom instruction for non-language-based courses such as Math, Graphic Arts, and Orchestra, the IHO agreed with defendant that plaintiff could not succeed in regular classes for language intensive subjects such as English and Global History.  In light of the lack of evidence to the contrary, the IHO adopted the findings of Dr. Tanzman and plaintiff's teachers and service providers who all explained that plaintiff isolates himself in the general classroom setting and requires constant attention from his personal aide to take lecture notes or participate in class.

In response to plaintiff's argument that tape recording his classes and continued assistance from his parents at home would enable him to succeed in general education classes, the IHO took notice of the litany of accommodations and supplementary services plaintiff had already received to help him succeed in the general education classroom setting. These services included a full-time one-on-one aide, note-taking performed by the aide, notes sent home to plaintiff's parents, extended time for assignments, instructional feedback to plaintiff's parents, frequent consultations with teachers and service providers, visual aides, previewing of tests at home, alternative test locations, the re-reading of directions, use of a calculator and computer, and the modification of test content.  The IHO reasoned that plaintiff could not possibly benefit more from the replaying of lectures at home than he does to live lectures while receiving constant assistance from his one-on-one aide and the multitude of other services that are already provided.  Therefore, the IHO concluded that the taping and replaying of lectures would not enable plaintiff to succeed in general education classes for language-intensive subjects such as English and Global History, and as a result,

determined the CSE's proposed IEP constituted a FAPE in the least restrictive environment as required by the IDEA.

The IHO also determined that the issue of whether plaintiff's IEP placed him in the least restrictive environment necessarily implicated that defendant should provide appropriate transition services to prepare plaintiff for life after high school.  The IHO based his determination upon the parties' shared concerns for the development of plaintiff's college study and future employment opportunities.  Notably, neither party expressly raised the issue of providing transition services.

Plaintiff's parents soon thereafter appealed to the SRO contesting the IHO's finding that defendant's IEP provided a FAPE to plaintiff in the least restrictive environment.  In response, defendant argued the IHO's decision regarding the 2005-2006 IEP should be upheld and cross-appealed the IHO's decision ordering defendant provide transition services on the grounds that the IHO exceeded its authority when raising the issue of transition services *sua sponte*.

## C. The SRO's Decision

On February 7, 2007, the SRO upheld the IHO's determination that the proposed IEP provided plaintiff with a FAPE in the least restrictive environment and annulled the IHO's decision requiring defendant to provide plaintiff with transition services.  In order to comply with the IDEA's least restrictive environment provision, the SRO explained that school districts must provide disabled students with supports and services to enable them to participate in general education classes "to the maximum extent appropriate" prior to their removal to self-contained classes. Pl's. Ex. H, SRO Decision, 11-12 (quoting 20 U.S.C. § 1412(a)(5)(A)).  Like the IHO, the SRO noted the long list of services and accommodations

provided to plaintiff, and as a result, adopted the IHO's conclusion that defendant provided

plaintiff with the appropriate level of supports and services.  The SRO further explained that

despite the defendant's extensive efforts, Dr. Tanzman's evaluation and the testimony of

plaintiff's teachers and service providers demonstrated plaintiff was unable to receive a

meaningful educational benefit from participating in general education classroom instruction

for language-intensive subjects such as Global History and English.  Accordingly, the SRO

upheld the IHO's determination with respect to whether the proposed IEP provided plaintiff a

FAPE.

In contrast, the SRO disagreed with the IHO's determination that the dispute over

the IDEA's least restrictive environment requirement necessarily implicated the provision of

appropriate transition services for plaintiff.  The SRO explained that a review of the record

showed plaintiff did not raise the issue of transition services either before or during any of the

hearings that were held, and therefore, the IHO exceeded his authority when raising the

issue *sua sponte*.  The SRO thus sustained defendant's cross-appeal and annulled the

portion of the IHO's decision directing defendant to provide appropriate transition services to

plaintiff.  Notwithstanding its final ruling, the SRO did "remind [defendant] of its obligation to

develop appropriate transition services pursuant to the Regulations of the Commissioner of

Education." Pl's. Ex. H, SRO Decision, 12 (citing N.Y.C.R.R. tit. 8, §§ 200.1(fff),

200.4(d)(2)(ix) (2008)).

## III.  DISCUSSION

### A.  Motion for Summary Judgment in IDEA Cases

IDEA cases employ a different legal standard than traditional summary judgment

motions because "the existence of a disputed issue of material fact will not defeat the

motion." J.R. v. Bd. of Educ. of the City of Rye Sch. Dist., 345 F. Supp. 2d 386, 394 (S.D.N.Y. 2004).  Instead, federal courts must conduct an independent judicial review of the administrative decisions based upon the preponderance of the evidence. Bd. of Educ. of Hendrick Hudson Cent. Sch. Dist., Westchester County v. Rowley, 458 U.S. 176, 205, 102 S. Ct. 3034, 3050 (1982); Cerra v. Pawling Cent. Sch. Dist., 427 F.3d 186, 191-92 (2d Cir. 2005).  This examination should include evidence presented at the administrative proceedings and any additional evidence submitted to the District Court. Grim v. Rhinebeck Cent. Sch. Dist., 346 F.3d 377, 380 (2d Cir. 2003).  Nevertheless, the IDEA places substantial limitations on the judicial review of state administrative decisions. Id. (citing Rowley, 458 U.S. at 204-08, 102 S. Ct. at 3050-52).  The Supreme Court has explained that the preponderance of the evidence standard "is by no means an invitation to the courts to substitute their own notions of sound educational policy for those of the school authorities which they review." Rowley, 458 U.S. at 206, 102 S. Ct. at 3051.  Accordingly, courts are required to give "due weight" to the administrative findings, id., while keeping in mind that they "lack the 'specialized knowledge and experience' necessary to resolve 'persistent and difficult questions of educational policy'". Id. at 208, 102 S. Ct. at 3052 (quoting San Antonio Indep. Sch. Dist. v. Rodriguez, 411 U.S. 1, 42, 93 S. Ct. 1278, 1301 (1973)).

The IDEA establishes a two-part inquiry for courts reviewing state administrative decisions: (1) whether "the State complied with the procedures set forth in the Act[;]" and (2) whether the school district's IEP is "reasonably calculated to enable the child to receive educational benefits[.]" Rowley, 458 U.S. at 206-07, 102 S. Ct. at 3051 (footnotes omitted). Further, when, as is the case here, "the handicapped child is being educated in the regular classrooms of a public school system, the achievement of passing marks and advancement

from grade to grade will be one important factor in determining educational benefit." Id. at 207, 102 S. Ct. at 3051 n.28.

**B.  Defendant's Compliance with the IDEA and New York State Law**

**1.  Required Educational Services**

Plaintiff alleges that the SRO erred in upholding the portion of the IHO's decision that found defendant offered him a FAPE as required by the IDEA and Article 89 of the New York Education Law.  Specifically, plaintiff contends that the school district improperly removed him from his general education ("mainstream") classroom environment and designated him to receive an IEP diploma instead of a local high school diploma.[2]  Under the IDEA, states must provide a FAPE to all disabled children in order to receive federal funding for state educational programs. See 20 U.S.C. § 1412(a)(1)(A).  A FAPE is provided so long as the state provides "personalized instruction with sufficient support services to permit the child to benefit educationally from that instruction." Rowley, 458 U.S. at 203, 102 S. Ct. at 3049.  Although the outcome must not be certain, the services must be "reasonably calculated" to benefit the child's education. Id.

In addition, the IDEA requires the State place the child in the least restrictive environment, thereby establishing a strong preference for educating disabled children in classrooms with non-disabled children. 20 U.S.C. § 1412(a)(5)(A) ("To the maximum extent appropriate . . . removal of children with disabilities from the regular educational environment occurs only when the nature or severity of the disability of a child is such that education in

---

[2] Plaintiff does not allege in his supplemental complaint that the he was denied any of the procedural safeguards for challenging the proposed IEP in question.  Accordingly, there will be no discussion of whether the State complied with these safeguards, e.g., a right to an impartial hearing, the right to attend and participate in proceedings, and subsequent review of by a state officer.

regular classes with the use of supplementary aids and services cannot be achieved satisfactorily.").  Three factors warrant consideration for determining whether a child can be adequately educated in a general education classroom setting with supplemental aids and services:

> (1) whether the school district has made reasonable efforts to accommodate the child in a regular classroom; (2) the educational benefits available to the child in a regular class, with appropriate supplementary aids and services, as compared to the benefits provided in a special education class; and (3) the possible negative effects of the inclusion of the child on the education of the other students in the class.

Oberti v. Bd. of Educ. of Borough of Clementon Sch. Dist., 995 F.2d 1204, 1217-18 (3d Cir. 1993) (footnote omitted).

Although the New York State Legislature has relatively recently assigned to school districts the burden to show a proposed IEP provides a disabled child with a FAPE, N.Y. EDUC. LAW § 4401(1) (McKinney 2007), this legislation did not become effective until nearly two years after plaintiff's impartial hearing commenced.  At the time plaintiff's parents invoked their son's due process rights to challenge the proposed IEP, the Supreme Court had ruled that the burden of persuasion remained with the party seeking relief absent some legislative determination from the State. Schaffer ex rel. Schaffer v. Weast, 546 U.S. 49, 56, 126 S. Ct. 528, 534 (2005).  As a result, the burden of persuasion was upon the plaintiff to show defendant's proposed IEP did not provide him with a FAPE.

## 2.  **The Proposed Removal of Plaintiff from the Mainstream Class**

Plaintiff's claim rests upon his contention that defendant's proposed IEP does not provide him with a FAPE because it calls for his removal from the school's mainstream

Global History class.[3]  In response, defendant offers as evidence the consensus of all experts, teachers, and service providers who testified at the impartial hearing that plaintiff has difficulty understanding language-intensive courses such as English and Global History. A number of professionals who work with or have examined plaintiff believe he tends to "withdraw into himself" when faced with difficulties understanding the material he is presented.  Significantly, plaintiff has strong math computation skills, but defendant offers evidence showing plaintiff nonetheless struggles with math word problems–a challenge that is likely the product of his language skills deficiencies.  Further, plaintiff has repeatedly failed the Global History RCT and Regents Exam despite having been re-enrolled in the same mainstream course pursuant to the pendency provision of the IDEA.  Dr. Tanzman's opinions assume particular relevance because plaintiff's parents themselves selected her to examine plaintiff in connection with the development of plaintiff's proposed IEP and she had previously examined plaintiff when he was in the third grade, thereby providing her with additional insight into plaintiff's development over the course of his annual IEPs.  Dr. Tanzman's opinion that plaintiff cannot understand the concepts presented in his Global History class and her findings as to plaintiff's under-developed communication skills were given appropriate weight by the CSE when developing plaintiff's 2005-2006 IEP.

Although not necessarily fatal to plaintiff's argument, the lack of evidence in opposition to Dr. Tanzman's opinion and the testimony given by plaintiff's teachers and service providers strongly supports the determination that the proposed IEP provides plaintiff with a FAPE.  Instead of offering evidence in direct opposition, plaintiff presents his recent

---

[3] In his written argument submitted to the Court, plaintiff described his Global History class as "the mainstream class primarily at issue in this case." Pl's. Mem. Opp'n Summ. J., 7.

- 14 -

passing grades in the mainstream Global History class as evidence that he can benefit from a mainstream educational environment.  During the first semester of the 2007-2008 academic year, plaintiff earned a passing average of 73 in his mainstream Global History course, including grades of 88 and 80 for the first and second quarters, respectively. Pl's. Ex. R.  During the prior academic year, plaintiff earned quarterly grades of 75, 71, and 65 in the same course before being removed from the class after the third quarter. Pl's. Ex. M.

Such evidence was not presented to the IHO or the SRO as plaintiff did not earn these grades until after the conclusion of the administrative hearing.  The Second Circuit has held evidence not presented during the administrative hearings may nonetheless be considered at the district court level. See Grim, 346 F.3d at 380 (citing 20 U.S.C. § 1415(i)(2)(B)).  Plaintiff's mainstream grades have at least some evidentiary value because case law suggests "a review of objective evidence is easiest . . . when a disabled child is in a mainstream class.  In such circumstances, the attainment of passing grades and regular advancement from grade to grade are generally accepted indicators of satisfactory progress." Walczak v. Fla. Union Free Sch. Dist., 142 F.3d 119, 130 (2d Cir. 1998).

However, a number of district courts within the Second Circuit have refused to engage in a retrospective approach when considering the appropriateness of a disabled student's IEP. See, e.g., J.R. v. Bd. of Educ. of City of Rye Sch. Dist., 345 F. Supp. 2d 386, 395 (S.D.N.Y. 2004) (holding that a determination of whether an IEP is reasonably calculated to enable a child to receive educational benefits is a necessarily prospective approach and courts must refrain from engaging in "Monday-morning quarterbacking"); Antonaccio v. Bd. of Educ. of Arlington Cent. Sch. Dist., 281 F. Supp. 2d 710, 724 (S.D.N.Y. 2003) (holding retrospective information should not be considered because it has no bearing on whether the

IEP was reasonably calculated to benefit the child at the time it was developed).  The Second Circuit Court of Appeals refused to expressly settle this issue themselves in <u>D.F. ex rel. N.F. v. Ramapo Cent. Sch. Dist.</u>, 430 F.3d 595, 599 (2d Cir. 2005), but went so far as to explain "there may be value in distinguishing between IDEA claims that dispute the validity of a *proposed* IEP, on the one hand, and suits that question whether an *existing* IEP should have been modified in light of changed circumstances, new information, or proof of failure." <u>Id</u>. n.3 (emphasis in original).

The requirement that defendant's CSE annually develop an IEP that is reasonably *calculated* to benefit plaintiff's educational development necessarily implies the CSE must make rational *predictions* about what will be best for plaintiff in the future.  A school district's CSE will never have the benefit of knowing for certain how a student would perform if allowed to continue his education pursuant to an un-modified IEP. Although the IDEA permits the consideration of evidence outside the administrative record, <u>see</u> 20 U.S.C. § 1415(i)(2)(C), the statute is silent as to whether courts may consider a student's performance subsequent to the development of the challenged IEP.  The fact that plaintiff is challenging a proposed IEP, as opposed to arguing for the modification of an existing IEP, supports defendant's argument that the Court should refuse to consider evidence of plaintiff's subsequent performance in mainstream courses.

Even if plaintiff's performance in his mainstream Global History courses is considered, the preponderance of the evidence supports the SRO's decision to uphold the IHO's finding that the proposed IEP provides plaintiff with a FAPE.  A student's passing grades in mainstream courses is far from a controlling factor in the determination of whether he was provided a FAPE in the least restrictive environment. <u>See</u> <u>Rowley</u> at 207, 102 S. Ct.

at 3051 n.28.  Rather, a court must consider the school district's attempt to accommodate the child in a mainstream environment, the educational benefit received by the child in a mainstream environment as opposed to a self-contained special education classroom, and the possible negative effects of the child's participation in the mainstream environment upon the education of non-disabled students. Oberti, 995 F.2d at 1217-18.

In plaintiff's case, there is overwhelming evidence as to the first and second Oberti factors.  First, defendants have provided a myriad of services and accommodations in an effort to allow plaintiff to succeed in the mainstream environment, including a full-time one-on-one aide, note-taking performed by the aide, notes sent home to plaintiff's parents, extended time for assignments, instructional feedback to plaintiff's parents, teacher and service provider consultations, visual aides, previewing of tests at home, alternative test locations, use of a calculator and computer, and the modification of test content.

Second, with respect to language-intensive courses such as English and Global History, plaintiff receives a much greater benefit from attending self-contained special education classes instead of mainstream classes. Testimony from Dr. Tanzman, plaintiff's teachers, plaintiff's school psychologist, and plaintiff's service providers all indicate plaintiff has difficulty with language-intensive course work and is pushed to mentally withdraw from the lessons and assignments when faced with challenging material.  Plaintiff's parents do not offer evidence contrary to the assertions that plaintiff suffers from substantially deficient verbal, social, and communication skills and mentally withdraws into himself.  Additionally, the school psychologist testified at a separate impartial hearing concerning plaintiff that keeping him enrolled in mainstream courses constitutes a detriment to his development because

[i]t's so off the point in thinking that his time is worth spending in trying to earn Regents credits when his functional impairments are so grave and significant and has so utterly affected the rest of his life.  So the downside is the functional cost, the time that we have to use the mode of instruction that could actually increase his level of independence as he emerges into adulthood.  So there's an enormous downside.  It's not just time away, it's time for him to withdraw into his internal world, which, again, in my opinion, makes him more disabled.

2007 Impartial Hearing Transcript, 1311-12.

The evidence of plaintiff's grades while attending his mainstream Global History course pursuant to the pendency IEP pales in comparison to the above testimony and opinions of other experts which all support the CSE's determination that plaintiff is reasonably calculated to benefit from the proposed IEP.  Despite the grades cited by plaintiff, he has failed the Global History Regents Exam four times and the Global History RCT three times. Murphy Aff. ¶¶ 15-18.  Further, plaintiff failed both midterm examinations for Global History during the 2006-2007 and 2007-2008 academic years, receiving grades of 55 and 50, respectively. Pl's. Exs. M, R.  While it is admittedly unfair to place too much emphasis on these two failing grades, the same reasoning renders plaintiff's other grades insufficient to overcome the evidence supporting removal from the mainstream Global History course.  Therefore, plaintiff's argument that his removal from the mainstream courses pursuant to the proposed IEP violates the IDEA will be rejected and defendant's motion for summary judgment will be granted with respect to this cause of action.

### 3. Designation of Plaintiff's Diploma

Plaintiff also objects to the portion of the proposed IEP setting forth his pursuit of an IEP diploma instead of a local high school diploma.  Unfortunately, even if plaintiff were capable of the necessary scores on the required exams, plaintiff does not have sufficient time under the IDEA to obtain a local high school diploma.  Plaintiff will turn 21 years old on

April 5, 2009, thereby placing him outside the statutory provisions of the IDEA and New York law. See 20 U.S.C. § 1412(a)(1)(A); N.Y.C.R.R. tit. 8, § 100.9(e) (2008).  To receive a high school diploma, plaintiff would have to pass at least four additional RCTs, including subjects in Global History, U.S. History, Writing or Reading, and Science.  Plaintiff would also need at least three additional years of high school instruction to earn a sufficient number of academic credits in English. Murphy Aff. ¶ 13.  Given the time constraints plaintiff faces before he becomes ineligible for a FAPE under the IDEA and New York law, in conjunction with his challenges with language-intensive courses, the designation that plaintiff pursue an IEP diploma under the proposed IEP was reasonably calculated to benefit plaintiff and will be deemed in conformity with the requirements of the IDEA.

## C. Transition Services

Plaintiff also challenges the SRO's decision to annul the portion of the IHO's decision that directed defendant to provide him with transition services.  As defined by New York law, transition services are composed of activities for disabled students aimed to improve a student's academic and functional achievement so that the student may more easily adapt to post-school-related activities, including college, employment, and independent living. N.Y.C.R.R. tit. 8, § 200.1(fff) (2008).  Pursuant to N.Y.C.R.R. tit. 8, § 200.4(d)(2)(ix), all proposed IEPs for students fifteen years or older shall "include . . . a statement of the responsibilities of the school district and, when applicable, participating agencies for the provision of such services and activities that promote movement from school to postschool opportunities, or both, before the student leaves the school setting." The IDEA has a parallel requirement for all proposed IEPs for students sixteen years or older. See 20 U.S.C. § 1414(d)(1)(A)(i)(VIII).

In response to plaintiff's claim, defendant cites <u>Hiller v. Bd. of Educ. of Brunswick</u> <u>Cent. Sch. Dist.</u>, 674 F. Supp. 73 (N.D.N.Y. 1987) as support for its argument that the SRO properly concluded the IHO exceeded his authority when directing defendant to provide transition services because plaintiffs never explicitly raised the issue of transition services during the impartial hearing.  In <u>Hiller</u>, the Commissioner of the Board of Education reviewed a prior hearing decision in which the only issue raised was the appropriateness of a disabled student's IEP. <u>Id.</u> at 77.  Rather than consider the IEP, the Commissioner reversed the CSE's finding that the student was disabled despite neither party contesting the student's disabled status under the relevant statutes. <u>Id.</u>  The <u>Hiller</u> Court held it was not bound by the Commissioner's determination because he exceeded his authority and thus the CSE's determination as to the student's disabled status was final because the state failed to challenge the CSE's decision on appeal. <u>Id.</u>

Unlike the IHO in this case, the Commissioner in <u>Hiller</u> reversed a prior decision that was unrelated to the issue of whether the school district provided sufficient educational services to plaintiff in order to comply with the applicable education laws.  A plaintiff's status as a disabled student *qualifies* him for a FAPE, whereas the transition services provided by a school district are *a component of* a FAPE.  It then follows that an IHO may consider the level of transition services provided upon a challenge being brought to a proposed IEP, especially in light of the statutory requirement under state and federal law that disabled students' IEPs include a statement as to the transition services to be provided by the school district.

Also lending support to the argument that the IHO properly directed defendant to provide transition services is the narrowness of his directive.  The IHO's decision with respect to this issue was limited to requiring defendant to include "exploration of post secondary

- 20 -

schools . . . where [plaintiff] can apply his special skills and pursue a vocational objective." Pl's. Ex. G., IHO Decision, 48.  The IHO did not further augment the transition services already included within defendant's proposed IEP. See id.  In light of the State legislature's decision to define transition services as consisting of activities that "facilitate the student's movement from school to post-school activities, including, but not limited to, post-secondary education," N.Y.C.R.R. tit. 8, § 200.1(fff) (2008), the IHO did not exceed his authority. Therefore, defendant's motion for summary judgment as to plaintiff's claim that the SRO erred in annulling the IHO's decision to require transition services will be denied and plaintiff's cross-motion as to this claim will be granted.

### D. Past Removal from the Mainstream and Plaintiff's Request to Enroll in Summer Courses

Plaintiff alleges defendant violated the IDEA's pendency provision, 20 U.S.C. § 1415(j), when removing him from his mainstream Global History class and denying his request to enroll in summer courses.  Plaintiff also asserts that the decision to bar him from taking summer courses violated his rights under § 504 of the Rehabilitation Act of 1973 on the grounds that the decision unlawfully discriminates against him because of his disability. Section 1415(j) of the IDEA provides that a disabled child shall remain in his current educational placement during the pendency of any proceedings conducted pursuant to the statute unless the educational agency and parents of the child can otherwise agree. See 20 U.S.C. § 1415(j).  Plaintiff alleges defendant removed him from the mainstream environment on March 28, 2007 despite the pendency of his lawsuit.  Although a letter dated March 29, 2007 from defendant's Director of Pupil Services strongly suggests plaintiff was improperly removed from the mainstream, Pl's. Ex. S, plaintiff's supplemental complaint requests relief

only in the form of a statutory injunction "pending final resolution of this administrative appeal." Pl's. Compl. ¶ 79.  In accordance with the Court's decision with respect to the challenged IEP, plaintiff's administrative appeal will be resolved and no injunctive relief will be warranted.  Therefore, plaintiff's claim for a statutory injunction will be dismissed.

Similarly, plaintiff's claim for injunctive relief to allow him to take summer classes is now moot because he will no longer be covered under the IDEA or New York's Education Law by the time summer courses resume in 2009.  Therefore, plaintiff's claim will be denied.

## IV.  CONCLUSION

To summarize, the preponderance of the evidence shows that defendant's proposed IEP for plaintiff is reasonably calculated to provide him with educational benefits.  A wealth of evidence concerning plaintiff's functional difficulties and communication deficiencies was presented before the IHO and SRO.  Additionally, there was extensive testimony as to plaintiff's challenges learning language-intensive subjects, including Global History.  Plaintiff's teachers, aids, and psychologists indicated he has the tendency to withdraw into himself when faced with concepts he cannot comprehend, thereby retarding his development.  Further, it is undisputed that defendant has provided a long list of services, aids, and accommodations in an effort to help plaintiff succeed in the mainstream environment before seeking to remove him to a self-contained special education classroom. In response, plaintiff's parents offered plaintiff's subsequent grades in his mainstream courses, but for the reasons already discussed, such evidence is insufficient to show that the proposed IEP does not place plaintiff in the least restrictive environment.  Therefore, defendant's proposed IEP provides plaintiff with a FAPE in accordance with the IDEA and New York law.

With respect to the issue of transition services, the IHO did not exceed his authority when directing defendant to explore post-secondary schools for plaintiff.  Plaintiff challenged the sufficiency of the services proposed under defendant's IEP, and based upon the controlling statutes, plaintiff's IEP must include transition services.  Accordingly, the IHO properly examined all of the services included under the IEP and made a decision with respect to those services.  Moreover, the IHO's directive was consistent with the definition of transition services under both federal and state law.

The remainder of plaintiff's claims call for relief that is no longer warranted as this decision ends plaintiff's administrative appeal and plaintiff will soon no longer qualify for the educational services guaranteed by the IDEA and New York law because of his age.

Therefore, it is

ORDERED that

1.  With respect to the following claims, Defendant's motion for summary judgment is GRANTED; plaintiff's cross-motion is DENIED, and these claims are DISMISSED:

(1) that the SRO erred in upholding the IHO's decision that the proposed IEP provided plaintiff with a FAPE;

(2) that defendant unlawfully removed plaintiff from the mainstream environment and barred plaintiff from taking summer courses while this action was pending;

(3) that plaintiff be awarded attorneys' fees from defendant.

2.  With respect to the SRO's decision to annul the portion of the IHO's decision

directing defendant to provide plaintiff with additional transition services,

defendant's motion for summary judgment is DENIED, plaintiff's cross-motion for

summary judgment is GRANTED, the SRO's decision is REVERSED, and the

IHO's decision is REINSTATED.

The Clerk is directed to enter judgment accordingly and close the file.

IT IS SO ORDERED.

_____
United States District Judge

Dated: November 18, 2008
       Utica, New York.